IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

RICHARD METHVIN                     )
and BEVERLY METHVIN,                )
                                    )
            Plaintiffs,             )    TC-MD 120074C
                                    )
      v.                            )
                                    )
MARION COUNTY ASSESSOR,             )
                                    )
            Defendant.              )    **DECISION**

Plaintiffs have appealed the real market value (RMV) of a condominium unit identified in

the assessor's records as Account R94792 (subject property) for the 2011-12 tax year.  (Ptfs'

Amended Compl at 1.)[1]  Trial on the matter was held in the Oregon Tax Court, Salem, Oregon

on October 15, 2012.  Richard Methvin (Methvin) appeared and testified on behalf of Plaintiffs.

Robb Witters, Senior Residential Appraiser, Marion County Assessor's Office, appeared and

testified on behalf of Defendant.

Plaintiffs' Exhibits 1-2 and Defendant's Exhibit A were admitted without objection.

I.  STATEMENT OF FACTS

The subject property is a single-family residential condominium unit "located within the

Toketie Condominium complex in South Salem," in close proximity to Interstate 5, as well as

having "convenient access to shopping, schools, and public transportation[.]"  (Def's Ex A at 1.)

The property was built in 1973 and is a three bedroom, one-and-one-half bathroom, two-story

townhouse with 1,116 square feet of living space, and a carport with space for one vehicle.  (*Id.*)

/ / /

---

[1] The original Complaint listed the subject property and another condominium, Account R94793.  (Ptfs'
Compl at 1.)  The Amended Complaint listed only the subject property, Account R94792, effectively removing the
other property from Plaintiffs' appeal.

The RMV of the property on the assessment and tax rolls for the 2011-12 tax year was $110,000. (Ptfs' Compl at 3.) The maximum assessed value and assessed value were $96,900. (*Id.*) Plaintiffs appealed to the Marion County Board of Property Tax Appeals (Board) and the Board reduced the RMV to $105,000. (*Id.* at 4.) The Board did not change the property's $96,900 maximum assessed value or assessed value because maximum assessed value automatically increases three percent per year (barring any physical changes to the property triggering a recalculation of maximum assessed value per ORS 308.153), in accordance with ORS 308.146(1), and, per ORS 308.146(2), assessed value is the lesser of RMV and maximum assessed value. The Board's $105,000 RMV is still greater than the property's maximum assessed value of $96,900.

Plaintiffs appealed to this court from the Board's Order, requesting a reduction of the RMV to $70,000.[2] Defendant requests that the court sustain the Board's reduced RMV of $105,000. (Def's Ans at 1; Def's Ex A at i, 9.)

Methvin presented the sale of four condominiums in the same block as the subject property. (Ptfs' Ex 2 at 1-4.) Methvin testified that all of the condominiums are on a loop and share a common area with the subject property. Three of Methvin's four comparable sales are essentially identical to the subject: all were built in 1973, have three bedrooms, one-and-one-half bathrooms, and 1,116 square feet of living space. (Ptfs' Ex 2 at 2-4.) Methvin's comparables sold between June 21, 2011, and December 16, 2011, for prices ranging from $57,500 for the smaller 864 square-foot two-bedroom unit (1343 Madras St. SE) that sold on June 21, 2011, to $91,000 for a unit essentially identical to the subject property that sold on August 26, 2011 (1361 Madras St. SE). (*Id*. at 1-4.) Witters testified that Methvin's comparables were on the market

---

[2] Plaintiffs' Amended Complaint requested a RMV of $74,400, but Methvin advised the court during the May 9, 2012, case management conference that he was seeking a value of $70,000. That same figure appeared in his written narrative submitted as part of his trial evidence. (Ptfs' Ex 1.)

for 116, 203, 108, and 96 days respectively. Witters testified that all of Methvin's comparable sales occurred after the assessment date.

Witters testified that two of Methvin's four comparable sales (comparables one and three) were bank sales. (*See id.* at 1, 3.) Witters further testified that Methvin's comparable sale three was a short sale. (*See id.* at 2.) Witters testified that Methvin's comparable sale four was an arm's-length transaction, but the property sold August 26, 2011, in a market that had sharply declined in the second and third quarters of that year, meaning that a significant positive (upward) adjustment would be necessary to use it as a measure of value on the January 1, 2011, assessment date. (*See id.* at 4.) Moreover, Witters highlighted the fact that Methvin's comparable sale four had been listed for sale in May 2011 for $110,000, before selling roughly three months later for $91,000. (*Id* at 4.) Methvin's uncontroverted testimony was that the owner of his comparable sale four spent approximately $70,000 remodeling the unit before sale; $40,000 on a complete kitchen remodel, gutting the kitchen and installing all new stainless steel appliances, and $30,000 on new tile and a complete remodel to the upstairs bathroom. However, Methvin did not submit sufficient documentary evidence substantiating the extent or cost of the alleged $70,000 remodel. Plaintiffs' Exhibit 4 is a printout from "Zillow," an online company that provides generalized pricing or value information based on the input of certain data by the user – in this case, Methvin. That document indicates, in part, that the subject property is a "condo with recent upgrades in kitchen and bath including granite counters and a jetted tub." (Ptfs' Ex 2 at 4.)

Witters submitted a comparable sales analysis using the sales of four condominiums he considered to be similar in design and amenities, three of which are located within one half mile of the subject property. (Def's Ex A at 2.) All of Witters's comparables sold in calendar year 2010; two in January, one in June, and another in December. (*Id.*) Sale prices ranged from a

low of $109,500 to a high of $117,500. (*Id*.) Witters applied a negative adjustment to his comparable sales of one percent per month for time, because Defendant's data showed a market decline in 2010 of one percent per month. (*Id.* at 2-3.) Witters's other adjustment was a negative $1,000 applied to all four comparable sales because the comparable properties had enclosed single car garages whereas the subject property only has a single car carport. (*Id.*) Witters made no further adjustments to his sales. (*Id*. at 3.) Witters's adjusted sale prices for his four comparables were $103,911, $99,946, $104,607, and $106,416, respectively. (*Id.* at 2.) Witters concluded that the subject had a value range of between $99,000 and $106,000, and based on his knowledge and experience, recommended that the court sustain the current RMV of $105,000. (*Id.* at 9.)

Methvin testified that he believed Witters should have made adjustments to his comparables because they were built later, have enclosed garages, have access to heated swimming pools and hot tubs, and have full time maintenance staff. (Ptfs' Ex 1.) Moreover, Methvin testified that Witters's comparable four is located in a gated community. Methvin also noted that all of Witters's comparables were two-bedroom units while the subject property was a three-bedroom unit. (Def's Ex A at 2.) Methvin stated that the two-bedroom units are "far more sellable because of the size of the rooms" (fewer but larger bedrooms, etc.), and that "[t]he average person who is going to buy in a condominium complex does not have a large family, but the room size is very important." (Ptfs' Ex 1.) Witters responded by testifying that he did not make any further adjustments before amenities such as pools, gated access, etc., because typically condominiums with more amenities have higher homeowner association fees and that "[b]ecause of the higher fees, a higher sale price is not reflected." (Def's Ex A at 3.)

/ / /

/ / /

## II. ANALYSIS

The issue in this case is the real market value of the subject property as of the assessment date, January 1, 2011. ORS 308.210(1).[3] In Oregon, all real property "not exempt from ad valorem property taxation * * * shall be valued at 100 percent of its real market value." ORS 308.232. Real market value is defined as the "amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1). "Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). The Oregon Department of Revenue has promulgated rules regarding the valuation of real property stating that "[f]or the valuation of real property all three approaches-sales comparison approach, cost approach, and income approach-must be considered. For a particular property, it may be that all three approaches cannot be applied, however, each must be investigated for its merit in each specific appraisal." OAR 150-308.205-(A)(2)(a).

Methvin and Witters each only considered the sales comparison approach, neither considered the income or cost approach. While it may be the case that neither the income approach nor the cost approach would be appropriate to value the subject property, the applicable administrative rule, OAR 150-308.205(A)(2)(a), still requires that all three approaches to value at least be considered. Additionally the valuation approach to be used "is [ultimately] a question of fact to be determined upon the record." *Pacific Power & Light Co. v. Dept. of Rev.* 286 Or 529, 533, 596 P2d 912 (1979). Condominiums, especially lower cost units, are sometimes bought for investment purposes and rented by the owner(s). Plaintiffs themselves appear to own

---

[3] All references to the Oregon Revised Statutes (ORS) are to 2009 and references to the Oregon Administrative Rules (OAR) are to the current version unless otherwise indicated.

at least two condominiums; the subject and a nearby (possibly adjacent) unit which they originally appealed but subsequently withdrew. Of more relevance is the fact that Methvin testified that the subject was an investment property that rents for $800 per month. As stated above, neither party submitted any other data relevant to the income approach.[4] Given the evidence presented and the fact that both Plaintiffs and Defendant rely on the comparative sales approach, the court is left with only that valuation method for determining the value of the subject property.

"In all proceedings before the * * * tax court * * * a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief." ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). Plaintiffs "must establish by competent evidence what the appropriate value of the property was as of the assessment date in question." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing [features or characteristics], and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Toy Box Maxi-Storage LLC v. Jackson County Assessor*, TC-MD No 110339C, WL 1958943 at *3 (May 31, 2012). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P.2d 235 (1990).

Methvin presented limited evidence of four comparable sales all located within the same neighborhood ("loop") as the subject property. "Under the sales comparison approach, the value

---

[4] The court notes in passing that an income of $800 per month, adjusted 25 percent for vacancy and credit loss and expenses, yields a value estimate of approximately $103,000 if a capitalization rate of seven percent is applied ($800 x 12 = $9600; $9600 x 0.75 = $7200; $7200 ÷ 0.07 = $102,857), compared to a current RMV of $105,000.

of a property is derived by 'comparing the subject property with similar properties, * * *.' That comparison is based on many factors, and adjustments are made for any differences between the comparable sales and the subject property." *Magno v. Dept. of Rev.*, 19 OTR 51, 58 (2006) (citations omitted). Methvin is not an appraiser or real estate expert, and he made no adjustments to his comparable sales. The lack of appropriately supported adjustments presents a problem.

Another problem for Plaintiffs is that all of their comparable sales sold after the assessment date. Defendant's data for median sales of condominiums in Salem in 2010 shows a decline of nearly two percent per month (from $160,000 to $128,000). (Def's Ex A at 5.) Additionally, three of the four comparable sales were bank sales or short sales. "When nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition." OAR 150-308.205-(A)(2)(c). Methvin made no market-based adjustments for the possible "bank influence" and is not qualified to render an opinion on whether foreclosures and short sales were "the market" for properties like the subject in 2011.

Methvin's lone remaining comparable sale at $91,000 (comparable four) had a sale date of August 26, 2011, over seven months after the assessment date. Without an adjustment for changes in market conditions (*i.e.*, time), Methvin's lone remaining comparable at best paints an incomplete and unclear picture which the court cannot rely upon. Assuming no other adjustments are warranted, Defendant's 2011 two-percent market decline yields an adjusted sale price of $104,530 (at two percent per month for seven months – January to July 2011), compared to a Board value of $105,000 for the subject. Plaintiffs' evidence is therefore not sufficient to meet the burden of proof required by ORS 305.427. Plaintiffs have not established that the value

currently on the assessment and tax rolls is in error. Moreover, Defendant's value evidence supports the current RMV.

### III. CONCLUSION

After careful consideration of all the testimony and evidence presented at trial, the court concludes that Plaintiffs' reliance on unadjusted post-assessment date comparable sales, 304 of which involved an element of duress, was not sufficient to prove by a preponderance of the evidence that the real market value of the subject property is incorrect. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied and the real market value of the subject property, Account R94792, shall remain undisturbed at $105,000 of the 2011-12 tax year.

Dated this ____ day of November 2012.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by* <u>*mailing*</u> *to: 1163 State Street, Salem, OR 97301-2563; or by* <u>*hand delivery*</u> *to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within* <u>*60*</u> *days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Dan Robinson on November 27, 2012. The Court filed and entered this Decision on November 27, 2012.*